

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARLENE J. DAVIS,

     Plaintiff,

v.                          Civil Action No. 3:17-cv-787

SPECIALIZED LOAN
SERVICING LLC, et al.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on Darlene Davis' ("Davis") letter requesting remand to Spotsylvania Circuit Court ("the Remand Request") (ECF No. 22); the MOTION TO DISMISS AMENDED COMPLAINT filed by Specialized Loan Servicing, LLC ("SLS") and The Bank of New York Mellon, f/k/a The Bank of New York ("BNY Mellon") (ECF No. 3); the MOTION TO DISMISS filed by America's Servicing Company ("ASC") and Wells Fargo Bank, N.A. ("Wells Fargo") (ECF No. 13); and DEFENDANT EMC MORTGAGE LLC F/K/A EMC MORTGAGE CORPORATION'S MOTION TO DISMISS TO PLAINTIFF'S AMENDED COMPLAINT (ECF No. 20). For the reasons set forth below, the Remand Request will be denied, and all three motions to dismiss will be granted, but with leave for Davis to file a Second Amended Complaint.

**BACKGROUND**

## A. Factual Background

This case is essentially a title dispute between Davis and several entities regarding real property owned by Davis at 5910 Chadwick Court in Fredericksburg, Virginia ("the Property"). See Am. Compl. (ECF No. 1-2) at 1. On or around December 2, 2004, Davis obtained a purchase money mortgage loan from Union Federal Bank of Indianapolis. See id. at 2; Note (ECF No. 14-1) at 1. Her Note was secured by a deed of trust on the Property ("the Deed of Trust"). See Deed of Trust (ECF No. 14-2).[1] Then, on December 9, 2004, Union Federal assigned the Deed of Trust to EMC Mortgage, LLC ("EMC") and JPMorgan Chase Bank. ECF No. 4-2 at 1; ECF No. 14-3 at 1; see also ECF No. 4-3 at 2. At some point, Davis' loan was "assigned" to Waterfield Mortgage

---

[1] ASC and Wells Fargo have attached the Note and Deed of Trust to their motion to dismiss. Although extrinsic evidence should generally not be considered in ruling on a Rule 12(b)(6) motion, a court may rely on such evidence if "it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (alteration in original) (internal quotations omitted). Davis discusses the Union Federal loan in the Amended Complaint, and she does not challenge the authenticity of either the Note or the Deed of Trust, so they can be considered here.

Company, to which Davis made monthly payments until April 2006.[2] Around that time, ASC notified Davis that it would become her loan servicer. Davis subsequently paid ASC on a monthly basis. Am. Compl. at 2.

The chain of events after ASC began servicing the mortgage is murky. In December 2010, Davis filed a Chapter 13 bankruptcy petition. Id.; see generally In re Darlene Jarvis Davis, Docket No. 3:10-bk-38727. SLS and BNY Mellon assert that the Property was at that time encumbered by two deeds of trust. The second mortgage was later stripped off in an adversary proceeding because it was wholly unsecured, but the Deed of Trust was not implicated in that proceeding. SLS & BNY Mellon Mem. (ECF No. 4) at 3; see generally Davis v. U.S. Bank, N.A., et al., Docket No. 3:12-ap-3083. While the Chapter 13 proceedings were pending, ASC allegedly refused Davis' repeated requests to modify the loan and engaged in dual tracking, and both ASC and Wells Fargo committed some unidentified mortgage fraud against her.[3] In

---

[2] Based on other documents concerning assignments of the Deed of Trust, it seems likely that Waterfield Mortgage merely serviced the loan, but was not actually assigned any interest in it.

[3] Wells Fargo had attempted to foreclose on the Property in November 2010. Davis later received a $1,000 check from the Independent Foreclosure Review, and was told that she could sue Wells Fargo for their purportedly fraudulent actions. See Am.

January 2012, Wells Fargo—which appears to control ASC—filed some document in the Chapter 13 action that "created a cloud on the title and cause[d] a fraud on the court." Am. Compl. at 2-3. Around that same time, EMC assigned the Deed of Trust to BNY Mellon. See ECF Nos. 4-3, 14-4.[4]

In May 2016, BNY Mellon unsuccessfully sought to be added as a creditor in the Chapter 13 proceeding. See Am. Compl. at 4. Davis then obtained a Chapter 13 discharge. See id. at 2-3. Following that result, on or around September 19, 2016, ASC notified Davis that her loan servicing was being transferred to SLS. Id. at 3; see also ECF No. 14-5. Although SLS was initially unresponsive to Davis' communications, she soon began paying it. However, Davis continued to receive SLS' bills and, eventually, foreclosure letters. She has now run out of money and has ceased her payments. Am. Compl. at 4. Consequently, SLS is attempting to foreclose on the Property. See id. at 1-2.

---

Compl. at 2. It is unclear if these facts are relevant to Davis' claims.

[4] Like the Note and Deed of Trust, the assignment documents are attached to ASC and Wells Fargo's motion, as well as SLS and BNY Mellon's motion. Those documents can be considered here because Davis discusses the assignments in detail in the Amended Complaint and does not challenge the documents' authenticity. See Am. Chiropractic Ass'n, 367 F.3d at 234.

## B. Procedural Background

Davis filed a Complaint in Spotsylvania Circuit Court on September 29, 2017, _see_ ECF No. 1-1, and filed an Amended Complaint on October 10. _See_ Am. Compl. Neither spells out any particular claims, but the gravamen of the dispute appears to be the fraud committed by ASC, Wells Fargo, and SLS, which Davis alleges invalidates both the 2012 assignment of the Deed of Trust to BNY Mellon and the 2016 servicing transfer to SLS. _See, e.g._, _id._ at 4 ("The transfer is invalid as it was p[ro]cured under fraud by fraud."); _id._ ("[S]ince ASC and [W]ells were illegal, how where [sic] they transferring anything. This is fraudulent misrepresentation, unfair . . . practices, violations of FDCP[A] and bankruptcy laws, UCC code . . . ."); _id._ at 5 ("The assignment is improper . . . and creates a cloud on title and is invalid."); _id._ at 6 ("[T]here is no contract with SLS as it was a fraudulent transfer."). To address these harms, Davis requests that the Court do several things: (1) "remove [SLS'] invalid/fraudulent lien on title and any other liens if they are there"; (2) grant a declaratory judgment that Davis is the sole owner of the Property; (3) order that the Note be returned to Davis "or deemed void if necessary to clear title"; (4) enjoin Defendants from foreclosing or attempting to foreclose on the

5

Property; (5) enjoin Defendants from inspecting the Property or "coming up onto [it] on a regular basis"; and (6) enjoin Defendants from violating the FDCPA or "billing for an invalid debt." Id. at 5, 7. She also seeks an undefined amount of damages for her payments to ASC. See id. at 7.

Davis did not serve Defendants with a copy of the Complaint or Amended Complaint until November 1, 2017 at the earliest. See ECF No. 1-5. On November 28, SLS and BNY Mellon timely removed the case to this Court on diversity jurisdiction grounds. Notice of Removal (ECF No. 1) ¶ 5; see also 28 U.S.C. § 1446(b)(1). Davis then filed multiple letters on December 20 and 21, stating that the case had been improperly removed and objecting to the Court's exercise of diversity jurisdiction. See ECF Nos. 8, 10. However, she did not formalize her Remand Request until February 13, 2018. See ECF No. 22. Before that date or shortly thereafter, all defendants moved under Rule 12(b)(6) to dismiss the Amended Complaint with prejudice.

## DISCUSSION

### I.    Remand Request

Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United

States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If such jurisdiction exists, the defendant or defendants seeking removal must file a notice of removal in federal court within 30 days of being served with the complaint. Id. § 1446(a)-(b)(1). However, consistent with the so-called "rule of unanimity," "all defendants who have been properly joined and served must join in or consent to the removal of the action." Id. § 1446(b)(2)(A); see also Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 259 (4th Cir. 2013); Mayo v. Bd. of Educ. of Prince George's Cty., 713 F.3d 735, 741 (4th Cir. 2013). Once the action has been removed, any motion for remand to state court must be made within 30 days of the filing of the notice of removal if the basis of the motion is "any defect other than lack of subject matter jurisdiction," including failure to comply with the unanimity requirement. 28 U.S.C. § 1447(c); see also Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203-04 (4th Cir. 2006).

The Court clearly has subject matter jurisdiction over this dispute. Section 1332 gives this Court jurisdiction if the matter in controversy is greater than $75,000 and the parties are completely diverse—"meaning a plaintiff cannot be a citizen

of the same state as any defendant." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015); see also 28 U.S.C. § 1332(a). Davis is a resident of Virginia, and Defendants are corporations which reside in states other than Virginia. See Am. Compl. at 1; Notice of Removal ¶ 6. Davis claims that "this is not a complete diversity case," but she points to no evidence contradicting the allegations in her own Amended Complaint that establish complete diversity. ECF No. 22.

In addition, the amount in controversy exceeds $75,000. Davis does not seek any specific amount of damages. However, "[i]n actions seeking declaratory or injunctive relief, . . . the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977); see also Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Here, among other equitable remedies, Davis seeks to extinguish SLS and BNY Mellon's mortgage lien on the Property. The Deed of Trust originally secured a loan value of $196,000, Deed of Trust at 1-2, and Davis still owes SLS and BNY Mellon a balance of $144,219.53 on the Note, see ECF No. 11-2 at 2. Those entities would not be entitled to those funds if Davis obtained her requested relief. Thus, the amount in controversy is well above

$75,000, and both requirements for diversity jurisdiction are met here.[5]

Nonetheless, SLS and BNY Mellon's removal may have been procedurally improper. As noted, in cases with multiple defendants, the rule of unanimity requires all defendants to join in or consent to removal. See Hartford Fire Ins., 736 F.3d at 259. The rule obligates each defendant to "register to the Court its official and unambiguous consent to a removal petition filed by a co-defendant." Creed v. Virginia, 596 F. Supp. 2d 930, 934 (E.D. Va. 2009) (internal quotations omitted). Defendants typically satisfy this demand by filing a single notice of removal, signed by the attorney for one defendant, which states that the other defendants consent to removal. See Mayo, 713 F.3d at 742. SLS and BNY Mellon's Notice of Removal does not contain any statement to that effect, and no other defendants filed removal petitions. Consequently, it might be the case that Defendants failed to satisfy the unanimity requirement here.

---

[5] Davis states that she is willing to amend her claims to limit the amount in controversy and eliminate diversity jurisdiction. Setting aside the viability (or lack thereof) of that procedure, Davis has not sought any amendment, so the Court need not confront that issue.

However, certain circumstances make SLS and BNY Mellon's apparent mistake irrelevant here. The rule of unanimity does not require a defendant to join in the notice of removal if that defendant has not been served with process when the notice is filed. Creekmore v. Food Lion, Inc., 797 F. Supp. 505, 508 n.4 (E.D. Va. 1992). Given Davis's handwritten certificate of service from November 1 and the lack of any evidence about service after that date, it appears that EMC had not been served with process when the Notice of Removal was filed in late November 2017. See ECF No. 1-5. EMC's lack of consent therefore does not defeat removal. ASC and Wells Fargo, on the other hand, were served in early November, see id., so that exception does not apply to them. Nonetheless, their subsequent opposition to Davis' letters mentioning remand, see ECF No. 15, cured any technical defect because that filing "clearly communicat[ed] [their] desire to be in federal court." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009); see also Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 202 (6th Cir. 2004).[6] As a result, remand is not appropriate simply because of the procedural issues affecting the Notice of Removal.

---

[6] That opposition similarly cured any failure to consent to removal within the 30-day period required by Section 1446. See 28 U.S.C. § 1446(b)(2)(B).

Moreover, even if those technical problems were incurable, Davis has waived any objections on procedural grounds. In four separate filings requesting remand, Davis has only asserted that: the Court lacks diversity jurisdiction; her physical and financial hardship prevents her from participating in this venue; and she did not agree to remove the case to this Court. Only the first argument is a proper basis for remand. More importantly, more than 30 days have now passed since the filing of the Notice of Removal, so Davis has waived the right to seek remand for other non-jurisdictional reasons, including the failure of all defendants to join in removal. See Payne, 439 F.3d at 203-04 (citing 28 U.S.C. § 1447(c)); Cooke-Bates v. Bayer Corp., No. 3:10-CV-261, 2010 WL 3984830, at *2 (E.D. Va. Oct. 8, 2010). Her initial reliance on some non-jurisdictional grounds does not preserve all procedural arguments in favor of remand for the rest of the case. See Cooke-Bates, 2010 WL 3984830, at *3. Accordingly, there is no foundation for remand, and the Remand Request will be denied.

## II. Motions to Dismiss

### A. Legal Standard

Rule 12(b)(6) permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P.

11

12(b)(6). In examining the legal sufficiency of a complaint, a court must "assum[e] that the facts alleged are true," Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009), and must "take the facts in the light most favorable to the plaintiff," Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013) (internal quotations omitted). At the same time, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard, however, "asks for more than a sheer possibility" that a defendant committed the wrong alleged, so "facts that are 'merely consistent with' a defendant's liability" are insufficient. Id. (quoting Twombly, 550 U.S. at 557). Therefore, a motion to dismiss should be granted if a plaintiff's complaint only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 555, 557).

The factual allegations by a pro se litigant like Davis "should be liberally construed." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). Thus, "'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Schreiber v. Dunabin, 938 F. Supp. 2d 587, 594 (E.D. Va. 2013) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). This generous standard is, of course, "not without limits." Id. Courts need not "conjure up questions never squarely presented to them," and "cannot be expected to construct full blown claims from sentence fragments." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

If the Court dismisses Davis' claims, it may do so without prejudice, giving her leave to amend her complaint. See Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 200 (4th Cir. 2014). Leave would be required here because Davis may no longer amend as a matter of course, the time for doing so having long since passed. See Fed. R. Civ. Pro. 15(a)(1)-(2). A "court should freely give leave when justice so requires." Id. 15(a)(2).

13

Accordingly, leave "'should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would . . . be[] futile.'" <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006) (quoting <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986)).

**B. SLS and BNY Mellon's Motion**

As noted, the allegations against SLS and BNY Mellon in the Amended Complaint are incredibly vague, at times to the point of unintelligibility. Cobbling together the scattered references to those entities, it appears that Davis contends that SLS committed some form of mortgage fraud subsequent to, or during the pendency of, the Chapter 13 proceedings. That fraud would, according to Davis, make SLS' demands for mortgage payments and threatened foreclosure unlawful. BNY Mellon is presumably connected to this scheme because it currently holds the Deed of Trust for Davis' Property, on which foreclosure is sought. But Davis has not identified with any specificity the claims that would permit SLS or BNY Mellon to be held liable in connection with those facts. Those assertions thus fail to give SLS and BNY Mellon "'fair notice of what the . . . claim is'" against them, which is reason enough to grant dismissal. <u>Twombly</u>, 550 U.S. at

14

555 (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see also</u> <u>Beaudett</u>, 775 F.2d at 1278.

Moving past that ambiguity, however, and reading the Amended Complaint extremely liberally, it seems that Davis is trying to: (1) undo the assignment of the Deed of Trust to BNY Mellon and servicing transfer to SLS; (2) obtain relief for alleged fraud and FDCPA violations by SLS; and (3) quiet title to the Property. Davis has not stated facts that would enable her to seek any of these forms of relief. However, this framework allows the Court to view Davis' allegations through the lens of recognizable claims, which helps in deciding whether dismissal as to SLS and BNY Mellon should be granted with or without prejudice.

First, to the extent that Davis wants to challenge the assignment or transfer on contractual grounds, or by arguing that the process was tainted by fraud, she lacks standing to do so. Davis is arguing, in effect, that EMC and ASC did not have the right to assign the Deed of Trust or transfer the loan servicing, respectively. But assignments and transfers are effected by contracts between the assignor/transferor and assignee/transferee. And, "[i]n Virginia, to sue on a contract one must be a party to or beneficiary of the contract." <u>Wolf v.</u>

Fed. Nat. Mortg. Ass'n, 512 F. App'x 336, 342 (4th Cir. 2013). Davis has not alleged that she was a party to the assignment from EMC to BNY Mellon or the transfer from ASC to SLS, or that she was an intended beneficiary of the relevant agreements. Courts have consistently dismissed borrowers' claims in analogous circumstances. See id.; Wilson–McClain v. Specialized Loan Servicing, LLC, No. 3:15CV541, 2016 WL 5662002, at *4 (E.D. Va. Sept. 29, 2016); Grenadier v. BWW Law Grp., No. 1:14CV827 LMB/TCB, 2015 WL 417839, at *4-5 (E.D. Va. Jan. 30, 2015), aff'd, 612 F. App'x 190 (4th Cir. 2015); Morrison v. Wells Fargo Bank, N.A., 30 F. Supp. 3d 449, 454 (E.D. Va. 2014); Bennett v. Bank of Am., N.A., No. 3:12CV34-HEH, 2012 WL 1354546, at *7 (E.D. Va. Apr. 18, 2012). Moreover, Davis lacks a cognizable interest in any assignment or transfer because, notwithstanding the potential invalidity of those steps, she "still has the obligation under the [N]ote to make payments. In fact, the only thing the assignment [and transfer] affects is to whom [Davis] makes the payments." Wolf, 512 F. App'x at 342; see also Bennett, 2012 WL 1354546, at *7 ("[T]he [b]orrower certainly has an interest in avoiding foreclosure. But the validity of the assignment does not affect whether [a] [b]orrower owes its obligations, but only to whom [a] [b]orrower is obligated."

16

(first alteration added) (emphasis in original) (internal quotations omitted)). Consequently, Davis' claims against SLS and BNY Mellon must be dismissed to the extent that they rely on this foundation. However, that dismissal will be without prejudice, and Davis will be given leave to amend to address the very unlikely possibility that she has some beneficial interest in the assignment and transfer.

Second, the Amended Complaint does not state any fraud- or FDCPA-based claims. To plead a fraud claim under Virginia law, Davis must allege: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. State Farm Mut. Auto. Ins. Co. v. Remley, 270 Va. 209, 218 (2005). She also must "state with particularity the circumstances constituting the fraud," Fed. R. Civ. P. 9(b)—that is, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations omitted). Davis' general statement that SLS and BNY Mellon committed some fraud does not satisfy this requirement. Indeed, the Amended Complaint "lacks

any allegations of a single misrepresentation by SLS or [BNY Mellon]." Wilson-McClain, 2016 WL 5662002, at *5. Accordingly, any claim sounding in fraud must be dismissed, although Davis will be given leave to try and state the circumstances of the fraud with requisite particularity.

Davis' attempted FDCPA claim is similarly flawed. Although Davis cites to a specific FDCPA provision, that part of the statute only contains Congress's findings and declaration of purpose, see 15 U.S.C. § 1692. It is possible that SLS or BNY Mellon, as the loan servicer and mortgage trustee, respectively, may qualify as a "debt collector" and may have engaged in tactics that would subject it to liability under the FDCPA's other conduct-specific provisions, such as those concerning false or misleading representations or unfair practices. See id. §§ 1692e, 1692f. But Davis cannot proceed with any FDCPA claim if she does not allege that SLS and/or BNY Mellon have violated some provision in the statute. See id. § 1692k(a) (creating private right of action against debt collectors "who fail[] to comply with any provision" of the FDCPA). As a result, to the extent that the Amended Complaint contains any FDCPA claims against SLS and BNY Mellon, they will be dismissed

without prejudice, with leave for Davis to amend and specify the nature of the FDCPA violations.[7]

Finally, the allegations in the Amended Complaint preclude Davis from seeking to quiet title to the Property. "[A]n action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." Maine v. Adams, 277 Va. 230, 238 (2009). Davis' theory appears to be that her title to the Property is superior to SLS and BNY Mellon's because her Chapter 13 discharge voided the Note and Deed and Trust. That argument, however, misunderstands the effect of the discharge. As explained in In re Mandehzadeh, 515 B.R. 300 (Bankr. E.D. Va. 2014),

> [a] lender generally has two rights with respect to a secured loan, an in personam right against the debtor and an in rem right against the collateral.
>
> A creditor's in personam and in rem rights are treated separately. The in personam right is eliminated by a discharge in bankruptcy. A discharge does not affect the

---

[7] The same is true for any possible claims under the Truth in Lending Act ("TILA") and Racketeer Influenced and Corrupt Organizations Act ("RICO"), which Davis references in passing. See Am. Compl. at 5. However, Davis' possible claims under those statutes are even harder to conceptualize than her potential FDCPA claims, so Davis should seriously examine the viability of any TILA or RICO claims before asserting them.

> *in rem* right. It does not void the lien
> securing the debt. The lien passes through
> bankruptcy unaffected by a discharge.
> Conversely, eliminating the lender's *in rem*
> right—stripping a lender's lien—does not
> affect the debtor's *in personam* liability.
> If there was *in personam* liability, the
> stripped claim becomes an unsecured claim
> and is entitled to be paid with the other
> unsecured claims. If otherwise
> dischargeable, it will be discharged with
> the other unsecured claims.

*Id.* at 301 (internal citations omitted). Here, Davis' loan was
secured by a Deed of Trust that attached to the Property. Davis
successfully had a second lien stripped through an adversarial
proceeding connected with the Chapter 13 action, so that
mortgagee's *in rem* right no longer exists, and Davis' *in
personam* liability as to that lien has presumably been
discharged. However, she has not alleged that the lien of the
Deed of Trust was ever stripped. SLS and BNY Mellon retain their
*in rem* right with respect to the Property, even if Davis' *in
personam* liability on the Note and Deed of Trust was discharged.
As a result, those entities can foreclose on the Property if
Davis defaults on her loan payments

The relevant question here is thus whether Davis has
satisfied the terms of the Note. *See* Anand, 754 F.3d at 199-200
("Where, as here, a property is encumbered by a deed of trust

20

and its release is conditioned on a party's performance under a note, determining who holds title to the property necessarily involves determining whether the party has performed under the note."). Davis plainly admits that she executed the Deed of Trust attached to the Property, even if she disputes the assignability of that document. She also acknowledges that she simply stopped sending payments to SLS when she ran out of money. In light of that allegation, it is readily apparent that Davis' "interest in the Property is still subject to the Deed of Trust held by [SLS and BNY Mellon]." Granados v. Bank of Am., N.A., No. 1-15-CV-752-GBL, 2015 WL 4994534, at *5 (E.D. Va. Aug. 19, 2015); see also Matanic v. Wells Fargo Bank, N.A., No. 3:12CV472, 2012 WL 4321634, at *7 (E.D. Va. Sept. 19, 2012). Therefore, Davis' claim for quiet title fails unless she can amend her complaint to establish that she has satisfied her obligations under the Note and Deed of Trust. Consequently, the Amended Complaint will be dismissed without prejudice as far as it asserts a quiet title claim against SLS and BNY Mellon.

**C. ASC and Wells Fargo's Motion**

The claims against ASC and Wells Fargo are virtually indistinguishable from those against SLS and BNY Mellon. For example, Davis makes the conclusory assertion that ASC and Wells

Fargo committed mortgage fraud while the Chapter 13 proceeding was ongoing, and also alleges that ASC's transfer of servicing rights and obligations to SLS was somehow fraudulent or improper. To the extent that the Amended Complaint is challenging the legitimacy of that transfer, or is asserting fraud, FDCPA, or quiet title claims against ASC and Wells Fargo, those claims will be dismissed without prejudice for the same reasons discussed above.

The only apparent independent claims against ASC and Wells Fargo relate to ASC's alleged failure to modify Davis' mortgage and its dual tracking of Davis.[8] See Am. Compl. at 2. Neither claim is available to Davis on the facts alleged. "[Without a] contractual obligation for a servicer to offer a homeowner a loan modification, . . . an individual cannot file suit against a lender for failure to enter into, to review, or to process a loan modification agreement—neither via breach of contract nor via breach of duty of good faith and fair dealing." Parris v. PNC Mortg., No. 2:14CV142, 2014 WL 3735531, at *6 (E.D. Va. July

---

[8] "Dual tracking occurs when the servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." Wilkins v. Wells Fargo Bank, N.A., 320 F.R.D. 125, 129 (E.D. Va. 2017) (internal quotations omitted).

28, 2014); see also Bourdelais v. JPMorgan Chase Bank, N.A., No. 3:10CV670, 2012 WL 5404084, at *5 (E.D. Va. Nov. 5, 2012) ("[T]he duty of good faith and fair dealing does not extend to the review and processing of loan modifications, absent an express [contract] provision indicating otherwise."); De Vera v. Bank of Am., N.A., No. 2:12CV17, 2012 WL 2400627, at *3 (E.D. Va. June 25, 2012) (breach of covenant of good faith and fair dealing claim could not be pleaded where "neither the Promissory Note nor the Deed of Trust create[d] a duty on the part of [the lender] to facilitate loan modification"). Davis has not addressed the terms of the Note or Deed of Trust in any detail, much less identified a provision requiring ASC or Wells Fargo to entertain her loan modification requests. Likewise, to state a plausible dual tracking claim, Davis would have to allege either that ASC breached some contractual obligation, or that it violated some federal regulatory standard. See Vance v. Wells Fargo Bank, N.A., 291 F. Supp. 3d 769, 774 (W.D. Va. 2018); Young v. CitiMortgage, Inc., No. 5:12CV079, 2013 WL 3336750, at *7 (W.D. Va. July 2, 2013). She has not done so. Accordingly, the Amended Complaint will be dismissed without prejudice against ASC and Wells Fargo to the extent that it asserts these claims.

## D. **EMC's Motion**

EMC's motion is much more straightforward and easy to resolve than the other defendants' motions to dismiss. EMC argues that dismissal with prejudice is appropriate because, besides the case caption, the Amended Complaint fails to allege any action by EMC, let alone conduct that could give rise to a plausible claim. In response, Davis asserts that EMC was at the center of the fraud perpetrated against her, and that EMC's 2012 assignment of the Deed of Trust to BNY Mellon was fraudulent because EMC's mortgage "had been satisfied in 2006," and there was no basis for EMC to reassign a mortgage loan that no longer existed. ECF No. 21 at 1-2.

The Amended Complaint lacks the detail necessary to sufficiently plead any claims against EMC. Davis alleges no facts whatsoever concerning EMC, so the Court cannot discern how that entity's conduct may have harmed Davis. Thus, even read liberally, the Amended Complaint clearly falls short of the Rule 12(b)(6) standard. See Johnson v. Soc. Sec. Admin., No. 3:16CV923, 2017 WL 2624207, at *2 (E.D. Va. June 16, 2017); Vanterpool v. Cuccinelli, 998 F. Supp. 2d 451, 464 (E.D. Va. 2014). The Court is not required to consider the facts asserted for the first time in Davis' response because "[i]t is well-

established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). Nonetheless, accounting for those facts here, Davis' claims as to EMC still fail. Stating generally that EMC was involved in the fraud against Davis, or that EMC could not have assigned the Deed of Trust in 2012, is insufficient to plead a fraud or related claim because those "'naked assertion[s]'" do not point to any specific actions for which EMC is liable and do not explain how its conduct was improper. Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557). As a result, Davis' claims against EMC must be dismissed.

However, the dismissal will be without prejudice. Without knowing more about EMC's actions with respect to Davis, it would be premature to conclude that Davis cannot point to any facts that would plausibly make EMC liable, such that amendment would be futile. Indeed, EMC clearly had an interest in the Property for some period of time, so its actions during that period may have affected Davis. Whether Davis can plausibly allege any claims against EMC based on those possible interactions, and

25

whether such claims would be within the applicable statute of limitations, are questions for a different day.

## CONCLUSION

For the foregoing reasons, Davis' Remand Request (ECF No. 22) will be denied; and SLS and BNY Mellon's MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 3), ASC and Wells Fargo's MOTION TO DISMISS (ECF No. 13), and DEFENDANT EMC MORTGAGE LLC F/K/A EMC MORTGAGE CORPORATION'S MOTION TO DISMISS TO PLAINTIFF'S AMENDED COMPLAINT (ECF No. 20) will be granted, except to the extent that those motions seek dismissal of all claims with prejudice.

Davis may file a Second Amended Complaint no later than August 10, 2018.

However, Davis is admonished that no further amendment will be allowed and that she should confine any amendment to claims for which there is a factual basis. Failure to do so likely will result in the dismissal of her case with prejudice.

It is so ORDERED.

_____ /s/ _REP_ _____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: July **9**, 2018